**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12703

Non-Argument Calendar

_____

JULIO CESAR CONNOR-MOLINA,

*Petitioner.*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A077-530-073

_____

Before BRANCH, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Julio Cesar Connor-Molina, a native and citizen of Honduras, petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his motion to reopen his proceedings,

where he seeks cancellation of removal under the Immigration and Nationality Act ("INA") § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).  After careful review, we deny the petition for review.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In 1999, the Immigration and Naturalization Service ("INS") issued Connor-Molina a "Notice to Appear," charging that he was removable for being a non-citizen present in the United States who had not been admitted or paroled, INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).  The Notice ordered him to appear before an immigration judge ("IJ") in San Antonio, Texas, on "a date to be set" and "a time to be set" to show why he should not be removed.  It informed him that if he "fail[ed] to attend the hearing at the time and place designated on this [N]otice, or any date and time later directed by the Immigration Court, a removal order" may be issued against him in his absence.  The certificate of service, signed by Connor-Molina and a Border Patrol agent, stated that Connor-Molina was personally served with the Notice and provided oral notice in Spanish of the "time and place of . . . his hearing and of the consequences of failure to appear."

In October 2000, Connor-Molina, through counsel, submitted a motion to change venue in which he admitted to the factual allegations contained in the Notice to Appear.  The IJ granted his request and transferred venue to Miami, Florida.  Connor-Molina did not attend his next hearing and the IJ entered an *in absentia* removal order in May 2001 directing that Connor-Molina be removed to Honduras.

In August 2001, Connor-Molina moved to reopen the proceedings, arguing that exceptional circumstances prevented him from attending his hearing. He sought a stay of his removal, noting that he had applied for temporary protected status and that his application was pending with the INS. The IJ granted his unopposed motion to reopen. The case was then administratively closed in April 2002, at both parties' request.

Around 17 years later, in April 2019, Connor-Molina asked for his case to be re-calendared for adjustment of status proceedings.[1] He explained that his adjustment of status application had been denied and he sought a hearing from an IJ on that application. The IJ granted the motion and held a hearing in January 2020. After that hearing, the IJ denied Connor-Molina's application and ordered him removed to Honduras in a written decision dated June 29, 2020. The IJ concluded that Connor-Molina's application did not warrant a favorable exercise of discretion because Connor-Molina had either failed to disclose or underreported his income over the course of several years, which weighed against a favorable exercise of discretion. The IJ also found Connor-Molina not credible.

Connor-Molina administratively appealed the IJ's decision to the BIA. However, he later filed an unexplained motion to

---

[1] In 2017, Connor-Molina had applied for adjustment of status based on a visa petition filed on his behalf by his mother, then a lawful permanent resident. That motion was denied by DHS because his removal proceedings had not been terminated, so jurisdiction for the adjudication of that request was proper before the IJ.

withdraw his appeal, which he represented he was making "[a]fter a careful review" of the case.  On June 21, 2022, the BIA entered an order stating that Connor-Molina's appeal had been withdrawn.  Thus, the BIA noted there was "nothing now pending before [it], [so] the record is returned to the Immigration Court without further action."  Connor Molina did not seek review of that BIA order.

In September 2022, even though he had withdrawn his appeal, Connor-Molina filed a motion to reopen his case.  He argued that the IJ lacked subject-matter jurisdiction over his removal proceedings because the 1999 Notice to Appear failed to include a time and place for the proceedings.  He relied on the Supreme Court's decisions in *Pereira v. Sessions*, 585 U.S. 198 (2018), and *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), to argue that his proceedings should be terminated or reopened to permit a proper charging document, compliant with INA § 239(a), 8 U.S.C. § 1229(a), to be filed with the immigration court.  He argued that, under this Court's decision in *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1185 (11th Cir. 2019), the issue of whether a Notice to Appear was a valid charging document was a claims-processing rule.  He argued that the uncured and defective Notice to Appear in his case violated his right to notice and the opportunity to be heard.  He also argued that he was eligible to apply for cancellation of removal because: he had the requisite 10 years of continuous physical presence in the United States; he had a qualifying relative—his U.S. citizen mother who was 91-years old; and his mother would suffer exceptional and extremely unusual hardship if he were removed to Honduras.  He also emphasized his strong family and community ties in the United States.  Connor-

Molina attached various documents to his motion, including applications for cancellation of removal and adjustment of status.

A single judge of the BIA denied Connor-Molina's motion to reopen. First, the BIA explained the *Pereira* decision did not concern jurisdiction, as this Court had held in *Perez-Sanchez*. It then explained that Connor-Molina had waived or forfeited any argument about the Notice-to-Appear requirements of INA § 239(a)(1), 8 U.S.C. § 1229(a)(1), by failing to raise those requirements until his motion to reopen. Next, it concluded that the motion to reopen was untimely because it had not been filed within 90 days of the final administrative decision, which, under regulations, was the IJ's June 29, 2020, decision. It explained that none of the timeliness exceptions in INA § 240(c)(7)(C), 8 U.S.C. § 1229a(c)(7)(C) or 8 C.F.R. § 1003.2(c)(3) applied to his case and that Connor-Molina had not made any argument about why the motion should be considered timely. Finally, it concluded that Connor-Molina had not shown *prima facie* eligibility for cancellation of removal. Accordingly, it denied his motion to reopen on this basis as well. Connor-Molina petitioned for review.

## II. STANDARD OF REVIEW

We review the BIA's denial of a motion to reopen for an abuse of discretion, although we "review any underlying legal conclusions *de novo*." *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1315 (11th Cir. 2022). The BIA can abuse its discretion by misapplying the law in reaching its decision or by failing to follow "its own precedents without providing a reasoned explanation for

doing so." *Id.* In reviewing the agency's discretionary decision-making, we ask whether the BIA's "exercise of discretion was arbitrary or capricious." *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013) (quotation marks and citation omitted). A petitioner bears a heavy burden to show arbitrariness or capriciousness in this context because "motions to reopen" removal proceedings "are disfavored." *Mei Ya Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). In deciding whether to uphold the BIA's decision, we are limited to the grounds upon which the BIA relied. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) ("We do not consider issues that were not reached by the BIA."), *abrogated in part on other grounds by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

## III. DISCUSSION

As a general matter, a motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal. INA § 240(c)(7)(C)(i); 8 U.S.C. § 1229a(c)(7)(C)(i).[2] Agency regulations provide that:

> In any case in which an appeal has been taken, the party taking the appeal may file a written withdrawal thereof with the office at which the notice of appeal was filed. If the record in the case has not been

---

[2] In his briefing on appeal, Connor-Molina does not argue that his case presents any of the exceptions to the 90-day deadline that are found in INA § 240(c)(7)(C), 8 U.S.C. § 1229a(c)(7)(C) or 8 C.F.R. § 1003.2(c)(3). He has, accordingly, abandoned any issue in that respect. *See Alkotof v. U.S. Att'y Gen.*, 106 F.4th 1289, 1295 n.9 (11th Cir. 2024).

forwarded to the Board on appeal in accordance with § 1003.5, the decision made in the case shall be final to the same extent as if no appeal had been taken.  If the record has been forwarded on appeal, the withdrawal of the appeal shall be forwarded to the Board and, if no decision in the case has been made on the appeal, the record shall be returned and the initial decision shall be final to the same extent as if no appeal had been taken. . . .

8 C.F.R. § 1003.4.[3]

Connor-Molina's briefing, while somewhat sparse, presents a few different arguments.  First, he contends that his motion was timely because it was filed within 90 days of the close of his removal proceedings, which "were completed on June 21, 2022," *i.e.*, the day the BIA entered a notice that his appeal had been withdrawn.  Second, and relatedly, he argues that his motion to reopen was filed within 90 days of a relevant BIA decision relating to his Notice to Appear objection, *see Matter of Fernandes*, 28 I. & N. Dec. 605, 613 (BIA 2022), and it predated another that supported his claims-processing objection to the deficient Notice to Appear, *see Matter of Aguilar Hernandez*, 28 I. & N. Dec. 774 (BIA 2024).  Third, he argues that the evidence in the record showed that he had established

---

[3] Connor-Molina does not argue that these regulations are erroneous or inconsistent with the underlying statute. *See, e.g, Loper Bright Enters.*, 603 U.S. at 411–12.  Accordingly, we do not weigh in on that question.

*prima facie* eligibility for cancellation of removal, so his motion should not have been rejected on that basis.[4]

Connor-Molina's first argument fails because, as we noted above, the BIA has regulations that govern its treatment of withdrawn appeals. *See* 8 C.F.R. § 1003.4. Those regulations establish that, when a party withdraws their appeal, the agency treats the IJ's order as the final administrative order. *Id.* In this case, therefore, the agency counted the 90-day deadline, INA § 240(c)(7)(C)(i); 8 U.S.C. § 1229a(c)(7)(C)(i), for filing of a motion to reopen from the IJ's June 2020 ruling. Connor-Molina does not argue that these regulations should not apply. Given the existence of these regulations and Connor-Molina's lack of argument about why they should not apply, we cannot say the BIA erred in following them. *See Ferreira*, 714 F.3d at 1243.

In his reply brief, Connor-Molina cites *Clement v. U.S. Attorney General*, 75 F.4th 1193, 1198–1200 (11th Cir. 2023). There, we held that the BIA's order that a petitioner had voluntarily

---

[4] In passing, Connor Molina notes that the BIA had *sua sponte* authority to reopen his case even if his motion was untimely. While this is true, we have held that we do not have jurisdiction to review the BIA's exercise of its discretion in this respect, except for, potentially, where a petitioner makes a constitutional claim about the BIA's exercise of its *sua sponte* authority. *See Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1294 & n.7 (11th Cir. 2008); *Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1286 (11th Cir. 2016); *see also Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 871 (11th Cir. 2018), *overruled in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419–23 & n.2 (2023). Connor-Molina has not raised any constitutional arguments, so we do not address this issue further.

24-12703                Opinion of the Court                9

withdrawn his administrative appeal was a final order of removal reviewable under 8 U.S.C. § 1252(a)(1). *Id.* *Clement*, however, addressed a different question than presented here. *See Finn v. Cobb Cnty. Bd. of Elections & Registration*, 111 F.4th 1312, 1318 (11th Cir. 2024) ("A decision can hold nothing beyond the facts of that case." (alteration adopted) (citation omitted)). *Clement* answered whether the Courts of Appeals can review a BIA order that concludes an administrative appeal has been voluntarily withdrawn. *Clement*, 75 F.4th at 1199–1200 ("[O]ur review is limited to whether the Board correctly deemed Clement's appeal to be withdrawn."). Here, Connor-Molina did not challenge the BIA's order that he had voluntarily withdrawn his administrative appeal, but, rather, has petitioned for review of the BIA's order denying his motion to reopen as untimely. As explained above, the agency's regulations say that, where an appeal is voluntarily withdrawn—as Connor-Molina does not contest was the case here—the agency treats the IJ decision as the final order. *See* 8 C.F.R. § 1003.4. *Clement* did not address either Section 1003.4, nor a situation where a petitioner voluntarily withdrew their appeal and then later filed a motion to open. *See Clement*, 75 F.4th at 1196–1204; *Finn*, 111 F.4th at 1318. Accordingly, nothing in *Clement* foreclosed the BIA's application of its own regulations in Section 1003.4 here.[5]

---

[5] Our holding in *Clement* arguably sits in some tension with 8 C.F.R. § 1003.4 because Section 1003.4 treats an administrative appeal as having never been taken after the BIA enters an order to that effect and *Clement* concludes that the BIA order entering an order that an appeal has been withdrawn as the final

Second, Connor-Molina's argument about *Matter of Fernandes* and *Matter of Aguilar Hernandez* does not really relate to timeliness at all.  If, as explained, the BIA permissibly treated Connor-Molina's final administrative order as entered in June 2020, the deadline to file a motion to reopen was 90 days later—still in 2020—and BIA decisions from 2022 and 2024 would not change the timeliness analysis.  However, this argument is better read as presenting a request for equitable tolling of the 90-day deadline.  *See Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1365 (11th Cir. 2013) (*en banc*) (concluding that "the 90-day deadline for a motion to reopen is a non-jurisdictional claim-processing rule subject to equitable tolling").  In other words, Connor-Molina's position is that these BIA decisions showed that he was entitled to relief when he previously was not, so the agency should not have applied the 90-day deadline to his motion to reopen.

However, Connor-Molina's briefing fails to squarely develop an equitable tolling argument, *see Alkotof*, 106 F.4th at 1295 n.9, and even assuming he has raised it, the extraordinary application of equitable tolling would not be appropriate here, *see Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) ("Because equitable tolling is 'an extraordinary remedy,' it 'is limited to rare and exceptional circumstances' and 'typically applied sparingly.'" (quoting *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005), *aff'd*, 549 U.S. 327 (2007))).  "Equitable tolling is appropriate when a movant

---

order.  However, as recounted above, Connor-Molina does not argue that § 1003.4 is inconsistent with the statute or should not apply to his case.

untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). Here, part of the reason Connor-Molina's motion to reopen was untimely was *not* beyond his control, it was because he withdrew his own administrative appeal "[a]fter careful review . . . ." *See id.*; 8 C.F.R. § 1003.4.[6] In addition, Connor-Molina did not pursue reopening based on his *Pereira*-based argument until well after the cases he cites began recognizing the merit to that argument. *See Pereira*, 585 U.S. at 198 (decided in 2018); *Niz-Chavez*, 593 U.S. at 155 (decided in 2021); *Perez-Sanchez*, 935 F.3d at 1185 (decided in 2019). In fact, Connor-Molina's motion to reopen primarily relied on *Pereira*, *Niz-Chavez*, and *Perez-Sanchez*, all cases which had been issued more than 90 days before the motion to reopen. Connor-Molina has not developed any argument about why he waited so long to present his claims-processing objection, nor why he failed to raise it in his administrative appeal that he withdrew, which might have been an avenue in which to present that argument. Accordingly, without more, we do not find merit to Connor-Molina's contention that the agency should have overlooked the untimeliness of his motion to reopen based on new caselaw.

Finally, we need not address Connor-Molina's arguments about his *prima facie* eligibility for cancellation of removal. The BIA

---

[6] If Connor-Molina had not withdrawn his administrative appeal and had, instead, filed his motion to reopen as a motion to remand before the BIA, it seems that this untimeliness issue, at least, could have been avoided.

reached that issue as an alternative, and the explanations we have given support the BIA's ruling that the motion to reopen was untimely. We need not reach the issue because it would not lead to us vacating the agency's decision or granting the petition. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (explaining that, generally, "courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach").

For the reasons explained, we conclude the BIA did not act arbitrarily or capriciously, nor abuse its discretion, in denying Connor-Molina's motion to reopen as untimely. Accordingly, we deny the petition for review.

**PETITION DENIED.**